477 F.2d 57
 UNITED STATES of America, Appellant,
v.
Jack ROBERTS et al., Appellees.
UNITED STATES of America, Appellant,
v.
Charles Bishop SMITH et al., Appellees.
UNITED STATES of America, Appellant,
v.
Jerome LEAVITT and Norman Shabas, Appellees.
UNITED STATES of America, Appellee,
v.
Michael POSNER, Appellant.
 Nos. 72-1514, 72-1637, 72-1729 and 72-1799.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 11, 1973.
Decided April 3, 1973.
 
 James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., John J. Robinson, Appellate Section, Crim.Div., U. S. Dept. of Justice, Washington, D. C., for United States.
 Gerald M. Werksman, William J. Stevens, Chicago, Ill., Thomas L. Robinson, Memphis, Tenn., Andrew A. Bucci, Providence, R. I., Michael B. Nash, J. Dillon Hoey, Barry J. Freeman, Nicholas M. Karzen, Jerome Rotenberg, Richard B. Caifano, Barry Goodman, Edward M. Genson, Richard H. Devine, Chicago, Ill., for Roberts, and others.
 Before SWYGERT, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 These appeals involve the question whether motions to suppress the content of intercepted telephone communications should have been granted in these four cases. Numerous persons were indicted for conducting an illegal gambling business in violation of 18 U.S.C. Sec. 1955 and making related interstate telephone calls in violation of 18 U.S.C. Sec. 1952.[1] The defendants filed motions to suppress evidence obtained by court-ordered wire interception. In part, the motions challenged the procedure used by the Department of Justice in authorizing the submission of the applications for the wire interception orders to the court. In Nos. 72-1514, 72-1637, and 72-1729, the motions to suppress were granted, and the Government appeals therefrom pursuant to 18 U.S.C. Secs. 3731 and 2518 (10)(b).[2] In No. 72-1799 the district court denied the motion to suppress, whereupon the defendant Michael Posner entered a plea of guilty, specifically reserving, however, the right to appeal the denial of his motion to suppress. This reservation of his right to appeal on a non-jurisdictional ground was made by agreement with the prosecutor and with the acquiescence of the trial court, and defendant Posner is now appealing pursuant to the reservation.
 
 
 2
 The applicable statute, 18 U.S.C. Sec. 2516(1), provides in pertinent part that "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge" for an order authorizing the interception of oral or wire communications by the FBI in certain instances. In Nos. 72-1514 and 72-1637, Attorney General Mitchell did not authorize or designate an Assistant Attorney General to authorize these applications. The authorizations in question were made by Sol Lindenbaum, Executive Assistant to the Attorney General, who affixed the Attorney General's initials as per the latter's standing grant of authority to act when he was unavailable.[3] Mr. Lindenbaum concluded from his "knowledge of the Attorney General's actions on previous cases that he would approve the request if submitted to him." For the reasons persuasively stated by Judge Sobeloff in United States v. Giordano, 469 F.2d 522 (4th Cir. 1972), certiorari granted, 411 U.S. 905, 93 S.Ct. 1530, 36 L.Ed.2d 194,[4] we conclude that the statute empowered only the Attorney General or a specially designated Assistant Attorney General-both of whom, in contradistinction to Mr. Lindenbaum, are subject to the political process of Senate confirmation-personally to authorize such applications.
 
 
 3
 When Mr. Lindenbaum initially authorized the applications, he affixed the Attorney General's initials to memoranda addressed to Assistant Attorney General Will Wilson, stating that "[p]ursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise those powers for the purpose of authorizing David M. Quinn to make the above-described application." Mr. Wilson, however, did not personally authorize the application, but delegated to Deputy Assistant Attorneys General the authority to sign his name to letters of authorization for attorneys in the field. This is exactly what they did. Had the initial authorization of the application actually been made by the Attorney General (or a specially designated Assistant Attorney General), we would agree with the Government that the purported "special designation" of Mr. Will Wilson was really not the exercise of the alternative contemplated by the statute (the Attorney General never exercised this statutory prerogative) but a delegation to perform a ministerial function, which the Assistant Attorney General could subdelegate.[5] Moreover, although the applications submitted to the trial judge identified Assistant Attorney General Will Wilson as the authorizing officer specially designated by the Attorney General, we would not be inclined to elevate form over substance to find a violation of 18 U.S.C. Sec. 2518(1)(a) and (4)(d), requiring the identity of the authorizing officer be transmitted to the court if there had been an initially proper authorization.[6] However, the fact is simply that in Nos. 72-1514 and 72-1637 there was no proper authorization at all; neither the Attorney General nor any Assistant Attorney General specially designated by the former authorized the wiretap applications. Therefore, the Government's arguments against finding a violation are founded on a non-existent premise and are unavailing,
 
 
 4
 Finally, as in Giordano, supra, the Government argues that even if there were "technical errors in the procedure used," the "drastic remedy of suppression of evidence" is unwarranted. Were it ours to decide whether or not judicially to fashion a rule of exclusion in this circumstance, we might agree with the Government. However, 18 U. S.C. Secs. 2515 and 2518(10)(a) are patently clear in expressing the Congressional judgment that these intercepted communications may not be received in evidence.[7] United States v. Giordano, supra at 531. Therefore, the motions to suppress were properly granted in Nos. 72-1514 and 72-1637.
 
 
 5
 In No. 72-1729, the Attorney General personally approved the wiretap applications. However, Judge McMillen held that the wiretap evidence as to Leavitt and Shabas must be suppressed because the wiretaps were the progeny of the illegal wiretaps involved in No. 72-1637.[8] We agree. 18 U.S.C. Sec. 2515 provides that "no evidence derived" from any intercepted wire or oral communication "may be received in evidence in any trial * * * if disclosure of that information would be in violation of this chapter." Implementing that Section, 18 U.S.C. Sec. 2518(10)(a) provides that any aggrieved person may move to suppress "evidence derived" from an unlawfully intercepted communication, and if the motion is granted the contents of the wiretap "or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter." Taken together, these Sections required Judge McMillen to grant the motions of Leavitt and Shabas because the Government admitted that they were both overheard on the properly suppressed Smith wiretaps (in No. 72-1637) which prompted the wiretap applications in No. 72-1729. Once again, the basis for exclusion is the statutory mandate that evidence derived from an illegal wiretap be suppressed and not a judicially fashioned exclusionary rule or "fruit of the poisonous tree" doctrine arrived at by balancing the respective interests involved. While the statutory command may not be read to press the scope of suppression beyond that existing under present search and seizure law, the statute embodies the decision to suppress unlawfully obtained interceptions and evidence derived therefrom. We think it no unusual extension of the scope of suppression under existing law to conclude that the wiretap evidence in No. 72-1729 was derived from the Smith wiretap.[9]
 
 
 6
 In No. 72-1799, involving Michael Posner, the last of the seven Detroit and Chicago wiretap orders was illegal because the interception authorization was signed by Mr. Lindenbaum instead of by the Attorney General or a specially designated Assistant Attorney General. The Government admits that some of the information supporting the first Chicago wiretap order application was obtained from the four Detroit court-authorized wiretaps. Three of those interception authorizations were signed by the Attorney General. The Government proved that the remaining one (dated April 3, 1970) was telephonically approved by the Attorney General; that satisfied Section 2516(1).[10] Therefore, only the evidence obtained from the final Chicago wiretap was subject to suppression. The district court must now decide if the evidence obtained from the six legal orders supported the guilty plea of Posner apart from evidence obtained through the illegal order of June 5, 1970. If so, his conviction will stand.
 
 
 7
 Orders in Nos. 72-1514, 72-1637, and 72-1729 affirmed. In No. 72-1799 the judgment is reversed and remanded for further proceedings consistent herewith.[11]
 
 
 
 [1]
 In No. 72-1799 the indictment was for a conspiracy to violate 18 U.S.C. Sec. 1952
 
 
 [2]
 In No. 72-1637, the notice of appeal was filed within 30 days of the district court's denial of the Government's motion to reconsider. The notice of appeal was timely filed. See United States v. Healy, 376 U.S. 75, 77-80, 84 S.Ct. 553, 11 L.Ed.2d 527
 
 
 [3]
 The internal Justice Department procedure followed here is set forth in United States v. Pisacano, 459 F.2d 259, 263 (2d Cir. 1972), and United States v. Giordano, 469 F.2d 522, 525-526 (4th Cir. 1972), certiorari granted 411 U.S. 905, 93 S.Ct. 1530, 36 L.Ed.2d 194
 
 
 [4]
 See also United States v. Robinson, 468 F.2d 189 (5th Cir. 1972), remanded for an evidentiary hearing to determine whether the wiretap applications were properly authorized under 18 U.S.C. Sec. 2516(1), 472 F.2d 973 (5th Cir. 1973; en banc); per contra, see United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972); United States v. Becker, 461 F.2d 230, 235-236 (2d Cir. 1972)
 
 
 [5]
 United States v. Ceraso, 467 F.2d 647, 651 (3d Cir. 1972); United States v. Cox, 462 F.2d 1293, 1300 (8th Cir. 1972); United States v. Becker, 461 F.2d 230, 235 (2d Cir. 1972)
 
 
 [6]
 See cases cited in note 5, supra
 
 
 [7]
 18 U.S.C. Sec. 2515 provides:
 "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."
 18 U.S.C. Sec. 2518(10)(a) provides in pertinent part:
 "Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that-
 "(i) the communication was unlawfully intercepted;
 "(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
 "(iii) the interception was not made in conformity with the order of authorization or approval.
 Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter."
 
 
 [8]
 We need not pass on the propriety of granting Shabas' motion on the additional ground that he was not mentioned by name in either order authorizing the wiretaps. But see United States v. Kahn, 471 F.2d 191 (7th Cir. 1972)
 
 
 [9]
 Smith v. United States, 117 U.S.App. D.C. 1, 324 F.2d 879 (1963), certiorari denied, 377 U.S. 954, 84 S.Ct. 1632, 12 L.Ed.2d 498, on which the Government relies, is not analogous. There the court properly held that testimony of an eyewitness to a crime need not be suppressed because the police had learned his identity from defendants during their illegal detention. Here Leavitt's and Shabas' private communications were invaded by wiretaps which emanated from the earlier illegal ones, and the contents of these communications were sought to be used against them. As then Judge Burger pointed out in Smith, even though the source of the witness' identity was tainted, "[t]he fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give. The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence." Id. at 881-882 (footnotes omitted). However, overhearing Leavitt and Shabas on the unlawful wiretaps was not without evidentiary significance; indeed those interceptions gave rise to probable cause for the wiretaps order directly against those defendants. Moreover, the utterances of the defendants themselves cannot be equated with the testimony of an occurrence witness
 
 
 [10]
 United States v. Pisacano, 459 F.2d 259, 263 (2d Cir. 1972)
 
 
 [11]
 Since the constitutionality of Title III of the Omnibus Crime Control Act was not raised below as a ground for suppression, we decline to consider it. See United States v. Wright, 466 F.2d 1256, 1259 (2d Cir. 1972)