**UNITED STATES of America**

**v.**

**Edward FINA et al., Movants.**

**Crim. No. 75-442.**

United States District Court,
E. D. Pennsylvania.

Dec. 5, 1975.

Robert F. Haley, II, Special Attorney (Strike Force on organized crime), Philadelphia, Pa., for plaintiff.

Joseph C. Santaguida, Joseph Litt, John A. Papola, Joel Harvey Slomsky and Frank D. Branella, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

BECHTLE, District Judge.

On July 21, 1975, thirteen individuals were charged in a two-count indictment with operating and conspiring to operate an illegal gambling business, in violation of 18 U.S.C. § 1955 and 18 U.S.C. § 371. Presently before the Court are the motions of the above-named individuals ("defendants") to suppress wiretap evidence.

This Court, on May 21, 1974, pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1970), authorized the interception of certain wire communications. In our view, the wiretap application showed that there was probable cause to believe that the seven named individuals,[1] and others as yet unknown, were committing offenses involving the operation of an illegal gambling business, that particular communications concerning those offenses would be obtained through interception, and that the premises where the interceptions were to be made were being used in connection with those offenses.[2] After their indictment, defendants moved to suppress the evidence gathered from the authorized interceptions and, at a hearing before this Court on October 15, 1975,

---

1. Those named were Edward Fina, James Dambra, Ann Sinatra, Raymond D'Ambrosio, Alfred J. Iezzi, Anthony Pungitore, and Atillio Marino, only the first four of whom were subsequently indicted.

2. The findings were made in accordance with 18 U.S.C. § 2518(3)(a), (b) and (d) which provide:

Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

\* \* \* \* \*

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

advanced numerous arguments in support of their motions.

### 1. *Probable cause for issuance of wiretap orders.*

■■ In order for the wiretap order to have been properly authorized, there must have been probable cause to believe that the seven named individuals in the application were engaged in the illegal gambling business. The Government's showing of probable cause was based upon the affidavit of Agent Stokes,[3] which in turn relied heavily upon information supplied by five confidential informants. As such, the affidavit must be tested under the standards formulated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), as further explained in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L. Ed.2d 723 (1971).[4] In *Aguilar*, it was established that, when law enforcement officers rely completely upon the tip of an informant, the affidavit must sufficiently disclose the underlying circumstances from which the informant concluded that the person to be named in the search warrant was engaged in criminal activity so as to enable a magistrate to independently judge the validity of the informant's conclusion. The affidavit must also disclose the circumstances from which the authorities concluded that the informant was credible or his information reliable. 378 U.S. at 114, 84 S.Ct. 1509. If the informant's tip is corroborated by other information, then *Spinelli* requires that the magistrate must be satisfied that the tip, as corroborated by this other information, is as reliable as a tip which would pass *Aguilar's* requirements when standing alone. 393 U.S. at 415, 416, 89 S.Ct. 584. *See United States v. Singleton*, 439 F.2d 381, 383–384 (3d Cir. 1971).

■ Upon examining the affidavit of Agent Stokes on its face, it is clear that the first test of *Aguilar* is satisfied, a conclusion which defendants do not dispute. The informants were able to conclude that the named individuals in the application were involved in the illegal gambling business based mainly upon alleged conversations the informants had with these individuals, wherein they advised informants that they were currently involved in the operation of a three-digit numbers lottery. Such information, if entitled to credit, establishes the requisite probable cause. *See Harris, supra*, 403 U.S. at 587, 91 S.Ct. 2075 (Harlan, J., dissenting).

■ Concerning the second *Aguilar* test, there is no question that the affidavit established the reliability of the information upon which the informants based their conclusions as, for the most part, they were based upon the above-mentioned conversations. *See Harris, supra*, 403 U.S. at 577–579, 91 S.Ct. 2075. Defendants contend, however, that the affidavit does not sufficiently set forth a factual basis from which to conclude that informant no. 1, in purporting to relate his conversations with Edward Fina to affiant, was probably telling the truth.[5] We do not agree. To be sure, while a bare statement by the affiant that he believed the informant to be truthful, reliable or

3. Affidavit of B. Frank Stokes, Jr. (Special Agent), dated May 21, 1974.

4. The Court notes that, even though the *Aguilar-Spinelli-Harris* line of cases involved the issuance of search warrants, the probable cause requirement for the issuance of wiretap orders is the same. *See United States v. Armocida*, 515 F.2d 29, 36 (3d Cir. 1975); *United States v. Falcone*, 505 F.2d 478, 481 (1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975).

5. Defendants quite rightly point out that, in the absence of the information supplied by informant no. 1 that Fina's three-digit numbers offices would accept in excess of $2,000 in any single day, there would have been no probable cause to believe that 18 U.S.C. § 1955 was being violated. *See* 18 U.S.C. § 1955(b)(1)(iii).

credible would not suffice, the affidavit in this case contains a sufficient factual basis for believing informant no. 1.

 It has often been held that, if an informant has given information in the past leading to arrests or convictions, it is sufficient to establish his or her reliability. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960); *United States v. McHale*, 495 F.2d 15, 17–18 (7th Cir. 1974); *United States v. Singleton, supra*, 439 F.2d at 384. Although the affidavit did not state that informant no. 1's previous information had led to arrests or convictions, it did state that his past information had never proved to be false or inaccurate and had been corroborated by independent investigation. This would appear to be sufficient. In *United States v. Armocida*, 515 F.2d 29 (3d Cir. 1975), the Third Circuit held that the reliability of an informant had been established by references contained in the affidavit "to other instances in which information provided by the same informant had been corroborated by independent investigation." *Id.* at 36 (footnote omitted). Furthermore, informant no. 1's reliability is bolstered by three additional factors. First, his information was based upon his own personal knowledge and not upon hearsay. *Harris, supra*, 403 U.S. at 581, 91 S.Ct. 2075; *United States v. McHale, supra*, 495 F.2d at 18. Second, his statement that he was "turning in" numbers wagers was against his penal interest, as he admitted complicity in an illegal gambling business, in violation of 18 U.S.C. § 1955.[6] *Harris, supra*, 403 U.S. at 583–584, 91 S.Ct. 2075. Finally, Edward Fina and Raymond D'Ambrosio, with whom informant no. 1 dealt, were known to Agent Stokes as gamblers. In conjunction with the above-mentioned information, the affiant's knowledge of a sus-

pect's reputation may properly be relied upon in assessing an informant's reliability. *Id.* at 581–583; *Jones v. United States, supra*, 362 U.S. at 271, 80 S.Ct. 725. Agent Stokes' knowledge was not a "bald and unilluminating" assertion that Fina and D'Ambrosio were known to him as gamblers, *see Spinelli, supra*, 393 U.S. at 414, 89 S.Ct. 584, but was based upon information received from the Chief Officer of the Organized Crime Unit, Philadelphia Police Department. The officer advised Agent Stokes of Fina's and D'Ambrosio's past arrests and convictions for violating local gambling statutes. Accordingly, all of the above factors are sufficient to establish the reliability of informant no. 1.

 Defendants also contend that, even though the reliability of informants no. 3 and no. 5 was established, the reliability of Atillio Marino and Anthony Pungitore, from whom informants no. 3 and no. 5 received their information, was not. Normally, an *Aguilar-Spinelli* inquiry is concerned with the reliability of unnamed confidential informants, and there is authority that if one unidentified informant relies in turn upon another unidentified informant, the reliability of both must be established. *See United States v. Carmichael*, 489 F.2d 983, 986–987 (7th Cir. 1973) (en banc). However, informants no. 3 and no. 5 did not rely upon unidentified informants. They relied upon named sources who were targets of the investigation. The Court's research has not revealed any cases that have directly dealt with this issue. The only authority which appears to support defendants' position is the statement by Mr. Justice Harlan in *Spinelli, supra*, that "if the informant came by the information indirectly, he did not explain why his sources were reliable." 393 U.S. at 416, 89 S.Ct. at 589. Given such a standard,

---

6. Apparently, informant no. 1 is a "street level employee" active as a runner for the gambling operation. As such, he is a person who "conducts" an illegal gambling business within the meaning of 18 U.S.C. § 1955(a).

*See United States v. Brick*, 502 F.2d 219, 225 n. 17 (8th Cir. 1974); *United States v. Manson*, 494 F.2d 804, 807 (7th Cir.), *cert. denied*, 419 U.S. 994, 95 S.Ct. 304, 42 L.Ed. 2d 266 (1974).

the fact that Marino's and Pungitore's statements were against their penal interests sufficiently manifests their reliability. *See United States v. Carmichael, supra,* 489 F.2d at 986.

 Finally, defendants argue that there was no probable cause to believe that the seven named individuals were operating an illegal gambling business in violation of 18 U.S.C. § 1955 for the reason that the Government, in its wiretap application, cited state laws which had been repealed prior to this Court's May 21, 1974, Order authorizing electronic surveillance. Section 1955(b) (1)(i) states that, in order for a gambling business to be illegal, it must be in violation of the laws of the state in which it is conducted. While it is true that the wiretap application cited 18 P.S. §§ 4601 and 4607, which were repealed on June 6, 1973, as the applicable state law, those sections were replaced by 18 C.P.S.A. §§ 5512 and 5514 which are virtually identical with the former sections. More importantly, both sets of laws prohibit the gambling business which the seven named individuals in the wiretap applications were allegedly engaged in *and* the subsequent indictment properly sets forth §§ 5512 and 5514 as the applicable state law. Thus, even though there may have been error, it cannot be said that defendants were prejudiced thereby.

Accordingly, the Court holds that the probable cause requirements of 18 U.S.C. § 2518 were satisfied.

2. *Other investigative procedures.*

 Defendants claim that the Government failed to show that other investigative techniques had been tried and failed or that they would reasonably appear to be unlikely to succeed or would be too dangerous, as required by 18 U.S.C. § 2518(1)(c) and (3)(c). We do not agree. These sections must be viewed in a practical and common sense fashion as they are "simply designed to assure that wiretapping is not resorted to in situations where traditional investi-

gative techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974). In addition, in order for this Court to hold that normal investigative procedures are unlikely to be successful we are only required to find "that there exist[s] a factual predicate in the affidavit." *United States v. Armocida, supra,* 515 F.2d at 38. *See United States v. Robertson,* 504 F.2d 289, 292–293 (5th Cir. 1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778 (1975). Agent Stokes' affidavit clearly satisfies that requirement.

 The Stokes affidavit reveals a history of physical surveillance and utilization of informants. These methods failed to determine the scope of the conspiracy and to establish the identity of all participants. Accordingly, Stokes' affidavit stated that: (1) the informants would not testify; (2) without that testimony, it would be difficult to determine the extent and volume of the gambling activities; (3) search warrants would not be fruitful due to the nature of bookmaking operations; (4) there were no known witnesses to testify to the illegal gambling activities; (5) surveillance was too easily noticeable and could jeopardize the investigation, and surveillance would not produce direct evidence, as alleged violations were occurring indoors; and (6) infiltration was not a practical possibility, since the heads of the operation would not hire persons who are unknown to the South Philadelphia organized crime element. Based upon these facts, the Court finds the affidavit satisfied the Government's burden under § 2518(1)(c) and that it showed that other normal investigative techniques "reasonably appear unlikely to succeed," as required by § 2518(3)(c).

Defendants' citation of *United States v. Kalustian,* 17 Cr.L. 2428 (9th Cir. August 4, 1975), does not persuade this Court to hold otherwise. *Kalustian* held that the Government must inform the reviewing judge of (1) "every technique

which is customarily used in police work in investigating the type of crime involved, and (2) explain why each of them has either been unsuccessful or is too dangerous or unlikely to succeed because of the particular circumstances of that case." *Id.* at 2429. Such a standard imposes a stricter burden on the Government than the one set down by the Third Circuit in *United States v. Armocida, supra.* To the extent they conflict, *Armocida* controls this Court's disposition. Moreover, the Ninth Circuit has addressed this issue three times in the space of five months, the first two rulings being inconsistent with the holding in *Kalustian.* Compare *Kalustian* with *United States v. Smith,* 519 F.2d 516 (9th Cir. 1975) *and United States v. Kerrigan,* 514 F.2d 35 (9th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975). In light of those decisions, it is difficult to discern exactly what the standard is in the Ninth Circuit, particularly since *Kalustian* fails to mention both the *Smith* and *Kerrigan* cases.

### 3. *Inclusion, if known, in application.*

Charles Castellano, Nicholas Lapetina, Anna Bozzo and Marie Scafidi contend that the Government's wiretap application violated 18 U.S.C. § 2518 (1)(b)(iv), which requires that "the identity of the person, if known, committing the offense and whose communications are to be intercepted" be included in the application. They argue that they were not named in the application even though they were "known" to the Government to be involved in illegal gambling activities. Paragraph 3 of the application reads in pertinent part: "This application seeks authorization to intercept wire communications of Edward Fina, James S. Dambra, Ann Sinatra, Alfred J. Iezzi, Anthony Pungitore, Raymond D'Ambrosio, and Atillio Marino, and others as yet unknown, concerning offenses enumerated in Section 2516 of Title 18, United States code . . . ."

 The standard by which this Court must gauge whether these four

persons were "known," within the meaning of § 2518(1)(b)(iv), is contained in the Supreme Court's decision in *United States v. Kahn,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). The Court stated:

Title III required the naming of a person in the application or interception order only when the law enforcement authorities have probable cause to believe that that individual is "committing the offense" for which the wiretap is sought. *Id.* at 155, 94 S.Ct. at 984 (dictum).

*See United States v. Moore,* 513 F.2d 485 (D.C.Cir.1975); *United States v. Bernstein,* 509 F.2d 996 (4th Cir. 1975), *petition for cert. filed,* 43 U.S.L.W. 3664 (U.S. May 27, 1975) (No. 74–1486). Therefore, we must determine whether the Government had probable cause to believe that these four persons were involved in the same gambling operation as the persons *named* in the application.

 At the hearing on the motion to suppress, Agent Stokes testified that he had no knowledge that either Marie Scafidi or Anna Bozzo were involved in any gambling activity whatsoever. With regard to Charles Castellano and Nicholas Lapetina, he stated that he knew that they were allegedly involved in some type of gambling activity, but that he had no information regarding their participation in the particular gambling enterprise which was the subject of the wiretap application. [N.T. 49–52.] In light of that testimony, at the time the application for wiretaps was made, the Government did not have probable cause to believe that Castellano, Lapetina, Bozzo and Scafidi were engaged in the illegal gambling activities for which the interception was sought.

### 4. *Failure to serve inventories.*

Castellano, Lapetina, Bozzo and Scafidi also contend that the evidence should be suppressed because they were not served with an inventory of the intercepted communications, in violation of

18 U.S.C. § 2518(8)(d).[7] On May 21, 1974, this Court authorized the interception of wire communications for a period of fifteen (15) days ending on June 5, 1974. On August 26, 1974, the Honorable Alfred L. Luongo, Emergency Judge, signed an Order directing that inventories be served on twenty-eight persons. The ninety-day time period expired on September 2, 1974. On November 14, 1974, this Court ordered that inventories be served on two additional persons.[8]

At no time during the above period did the Government make available to this Court the names of Castellano, Lapetina, Bozzo or Scafidi even though the Government knew that their conversations had been intercepted. Accordingly, they argue that this Court abused its discretion under § 2518(8)(d) because, without their names, the Court was unable to exercise its discretion. We reject this contention.

■ While they did not receive formal inventory notice in accordance with § 2518(8)(d), they did receive actual notice from Agent Stokes that their oral communications had been intercepted, within the ninety-day time period. [N.

T. 61–65.] Such actual notice is sufficient.[9] The Third Circuit in *United States v. Ianelli*, 477 F.2d 999 (3d Cir. 1973), *aff'd on other grounds*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), reached much the same conclusion:

> Appellants . . . contend that they were not served with an inventory of the intercepted communications. 18 U.S.C. § 2518(8)(d). They eventually received actual notice well in advance of the hearing on a motion to suppress. There was no prejudicial error here. 477 F.2d at 1003 (citations omitted).

#### 5. *Stale information.*

■ Defendants' final contention is that the information upon which the wiretap order issued was stale. They argue that, since the information upon which Agent Stokes relied was approximately three weeks old, probable cause did not exist at the time the Order was issued.

The issue as to whether or not information in an affidavit is stale depends upon the nature of the activity in question and requires review on a case-by-

---

7. 18 U.S.C. § 2518(8)(d) provides in pertinent part:

Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—

(1) the fact of the entry of the order or the application;

(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

(3) the fact that during the period wire or oral communications were or were not intercepted.

8. Those two persons were not subsequently indicted and are not defendants in this case.

Therefore, the question of delay of formal inventory notice is not before this Court. We note, however, that absent a showing of prejudice by the individuals subject to the delay, the courts have held that such a delay is not a sufficient ground to grant a motion to suppress. *See United States v. Lucido*, 373 F.Supp. 1142 (E.D.Mich.1974); *United States v. LaGorga*, 336 F.Supp. 190 (W.D. Pa.1971).

9. *United States v. Donovan*, 513 F.2d 337 (6th Cir. 1975), upon which these four individuals heavily rely, is factually distinguishable from this case. *Donovan* was concerned with the question of whether a motion to suppress pursuant to 18 U.S.C. § 2518(10)(a) should be granted if defendants had not received formal inventory notice, in violation of § 2518(8)(d). The court specifically noted that no *actual* notice had been given to defendants. 513 F.2d at 343. Since there was actual notice in this case, *Donovan* sheds no light on the issue before this Court.

case basis. The Third Circuit in *United States v. Harris*, 482 F.2d 1115 (3d Cir. 1973), provided this Court with guidelines by which to carry out that review:

The law is well founded that probable cause to justify the issuance of a search warrant must exist at the time the warrant is issued. *United States v. Boyd*, 422 F.2d 791 (6th Cir. 1970). The question of the staleness of probable cause depends more on the nature of the unlawful activity alleged in the affidavit than the dates and times specified therein. As noted in *United States v. Johnson*, 461 F.2d 285 (10th Cir. 1972) at 287:

"Initially, it should be noted that the validity of probable cause cannot be qualified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. *However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.*" Id. at 1119 (emphasis added).

The investigation in this case revealed that the illegal gambling activity was being conducted on a daily, continuous basis. The very nature of a "numbers" operation requires this to be so. Additionally, there must always be a certain delay between the time the informant gathers his information and the time a court issues a wiretap order. This is the result of the procedural hurdles that law enforcement agencies are faced with in order to obtain such an order. Accordingly, we do not believe that the information supplied by the informant was stale.

This Memorandum Opinion is in support of the Court's previous Order entered November 4, 1975, denying defendants' motions.