UNITED STATES of America

v.

Frederick C. TETI.

Crim. No. 75–669.

United States District Court,
E. D. Pennsylvania.

Aug. 25, 1976.

**130**

Robert E. J. Curran, U. S. Atty., Joseph M. Fioravanti, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Edward G. Rendell, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Defendant Teti has been charged with two counts of receiving firearms as a convicted felon, in violation of 18 U.S.C.App. § 1202(a)(1), and with two counts of illegally possessing a firearm, in violation of 26 U.S.C. §§ 5861(d) and (i). This Court held a hearing on defendant's motion to suppress certain physical evidence and a statement which he made to agents of the Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury. For the reasons stated below, the motion to suppress the physical evidence will be granted and the motion to suppress the statement will be denied.

After careful consideration of the conflicting testimony and exhibits presented at the hearing, the Court makes the following narrative findings of fact.

### FINDINGS OF FACT

On June 20, 1975, Officer Wallace of the Philadelphia Narcotics Unit received a telephone call from a confidential informant. The informant related that, over the weekend, between the dates of June 15 and June 18, 1975, he had observed defendant Teti, inside defendant's residence at 307 Unruh Street, in the possession of, and selling, marijuana and methamphetamine. Armed with this information, and the fact that the informant had given reliable information in the past, Officer Wallace applied for and obtained a search warrant. Officer Wallace then made a record check on defendant. He was informed over the telephone by an Officer Thompas that defendant had two prior arrests. After the first arrest, defendant was charged with violating § 6106(a) of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. § 6101 *et seq.* ("P.U.F.A."), and 18 Pa.C.S.A. § 908 which prohibits, *inter alia*, the possession of an offensive weapon. Defendant was found not guilty on both charges. After the second arrest, defendant was charged with violating §§ 6106(a) & 6108 of P.U.F.A., 18 Pa.C.S.A. § 908, and §§ 780–113(a)(16) & (30) of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 *et seq.* (Supp.1976), which prohibit possession of, and possession with the intent to deliver, a controlled substance. Defendant was found guilty on the first three charges and put on one to two years' probation. However, the extract of defendant's criminal record, from which Officer Thompas must have referred to while talking to Officer Wallace on the telephone, does not indicate as to which of the above charges defendant was found guilty. Nevertheless, after talking with Officer Thompas, Officer Wallace came away with the impression that defendant had been convicted of violating the

P.U.F.A. He relayed this impression to his superior officers, Lt. Wilson and Sgt. Pruitt.

On June 25, 1975, at approximately 7:45 p. m., Lt. Wilson, Sgt. Pruitt, and Officers Wallace, Cassady and Morse drove to 307 Unruh Street in order to execute the search warrant. They parked their car a few houses down from 307 Unruh Street and then proceeded at a brisk pace to the Teti residence. Officers Cassady and Morse went around to the back door. Lt. Wilson, followed by Officer Wallace and Sgt. Pruitt, went to the front door. Although the front door was open, the front screen door was closed. Upon reaching the screen door, Lt. Wilson knocked and announced that they were the police and had a search warrant for that location. Without waiting for a reply, and virtually simultaneously with the knock and announcement, Lt. Wilson opened the screen door and, along with Officer Wallace and Sgt. Pruitt, entered the living room of the house. Upon entering, Lt. Wilson observed Frederick Teti, Sr., to his immediate left, seated in a chair. He then walked straight through into the dining room and on into the kitchen, during which time he observed defendant sitting on a chair in the dining room, speaking on the telephone. Lt. Wilson again told defendant and his father who they were, showed them his badge and asked to see defendant's bedroom. It was ultimately determined that defendant's bedroom was in the basement. Lt. Wilson, accompanied by defendant, Frederick Teti, Sr., Officer Wallace and Sgt. Pruitt, proceeded down into the basement in order to search the bedroom. Upon opening the bedroom door, Wilson observed a "brown-green weed" on a coffee table. Recognizing it to be marijuana, he immediately placed defendant under arrest and gave him the *Miranda* warnings. While Frederick Teti, Sr., remained outside the room, the three officers, with defendant present, then proceeded to search the room. The room itself was approximately eight by twelve feet in size and was in total disarray. While searching the room for narcotics, the three officers discovered a total of seventeen firearms, as well as ammunition for the weapons. Three of the seventeen firearms were in open display on a wall gun rack with the rest secreted in various places throughout the room. Upon discovering several of the hidden weapons, one of the three officers handcuffed defendant. Each of the firearms was seized for two reasons. The first was for the officers' own personal protection. The second was that Lt. Wilson and Officer Wallace believed that it was a violation of federal law for a person who had been convicted of violating the Pennsylvania Uniform Firearms Act to possess firearms. (*See* 18 U.S.C.App. § 1202(a)(1).) Five of the seized weapons ultimately formed the basis for the instant indictment.[1]

More than two months later, on September 5, 1975, at approximately 9:00 a. m., Special Agent Minichino of the Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury, telephoned defendant and asked whether he could interview him. Defendant consented and, shortly thereafter, Agent Minichino, accompanied by Agent Piccirilli, went to 307 Unruh Street and met with defendant. Agent Minichino immediately advised defendant that they were there to interview him concerning his arrest by the Philadelphia police on June 25, 1975, specifically with respect to the firearms. Agent Minichino then gave defendant the *Miranda* warnings and asked him if he understood them. Defendant responded that he would not give a written statement, but would grant an interview. After approximately ten to fifteen minutes, during which time defendant made a statement concerning the means by which he came into possession of the firearms, defendant stated that he did not wish to say anything more until his attorney was present. The interview was terminated at that time.

1. The weapons are: (1) a Smith and Wesson .38 caliber revolver; (2) a Smith and Wesson .357 caliber revolver; (3) a Browning 9-mm, semi-automatic pistol; (4) a Browning .380 caliber, semi-automatic pistol; and (5) a sawed-off, .22 caliber, bolt-action rifle, with a barrel length of 3⅜ inches.

## DISCUSSION

### 1. *Probable cause for issuance of search warrant.*

In order for the search warrant to have been properly issued, there must have been probable cause to believe that defendant Teti either had in his possession marijuana or methamphetamine, or was selling such substances from inside his residence, 307 Unruh Street. Since the showing of probable cause in this case was based upon the affidavit of Officer Wallace, who relied primarily upon information supplied by a confidential informant, his affidavit must be examined under the standards formulated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and as further explained in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We recently examined those standards in *United States v. Fina*, 405 F.Supp. 267, 270 (E.D.Pa.1975), wherein we stated:

In *Aguilar*, it was established that, when law enforcement officers rely completely upon the tip of an informant, the affidavit must sufficiently disclose the underlying circumstances from which the informant concluded that the person to be named in the search warrant was engaged in criminal activity so as to enable a magistrate to independently judge the validity of the informant's conclusion. The affidavit must also disclose the circumstances from which the authorities concluded that the informant was credible or his information reliable. 378 U.S. at 114, 84 S.Ct. 1509. If the informant's tip is corroborated by other information, then *Spinelli* requires that the magistrate must be satisfied that the tip, as corroborated by this other information, is as reliable as a tip which would pass *Aguilar's* requirements when standing alone. 393 U.S. at 415, 416, 89 S.Ct. 584. *See United States v. Singleton*, 439 F.2d 381, 383–384 (3d Cir. 1971).

There is no question that the affidavit on its face satisfies the first test of *Aguilar*, as the information supplied by the informant concerning defendant's drug-related activities inside 307 Unruh Street was based upon the informant's personal observations. "Such information, if entitled to credit, establishes the requisite probable cause." *United States v. Fina, supra*, 405 F.Supp. at 270 (citation omitted).

With respect to *Aguilar's* second test, the fact that the informant's conclusions were based upon his personal observations is sufficient to establish the reliability of the information. *See United States v. Harris, supra*, 403 U.S. at 577–579, 91 S.Ct. 2075. In addition, the affidavit contains a sufficient factual basis from which a magistrate could conclude that the informant, in purporting to relate his personal observations to Officer Wallace, was probably telling the truth. The affidavit states that the informant had, on four occasions within the previous year, given information to the Philadelphia Police Narcotics Unit which led to arrests and convictions. Such information is sufficient to establish the informant's reliability. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. McHale*, 495 F.2d 15, 17–18 (7th Cir. 1974); *United States v. Singleton, supra*, 439 F.2d at 384.

Defendant contends that, even though the search warrant is sufficient on its face, it is nevertheless invalid because the Government did not establish that the person who gave Officer Wallace the information was, in fact, the informant who had previously given accurate information. He further contends that the warrant is invalid because it contains a material misstatement of fact. We reject these contentions.

The testimony developed at the suppression hearing shows that, on June 20, 1975, Officer Wallace took a telephone call from a person who identified himself as Officer Kristopa's informant. He asked to speak with Kristopa. When summoned, Kristopa was apparently too busy to take the call himself, so he asked Wallace to speak with the caller after he had informed Wallace that the caller was his confidential informant. As mentioned above, the informa-

tion concerning defendant's drug-related activities provided by the caller was incorporated into Officer Wallace's affidavit. In addition, it was Officer Kristopa who provided Officer Wallace with the information as to how reliable the informant had been in the past. Since Officer Wallace had never before spoken to the informant, defendant posits that the Government failed to prove that the person who spoke with Officer Wallace was actually Officer Kristopa's informant.

We begin our "authentication" analysis by noting that the connection between a telephone call and a specific caller may be established by circumstantial evidence. 7 *Wigmore on Evidence*, § 2155 (3d ed. 1940); *McCormick on Evidence*, § 226 (2d ed. 1972); *United States v. John*, 518 F.2d 705, 709 (7th Cir. 1975); *Carbo v. United States*, 314 F.2d 718, 743 (9th Cir. 1963), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). To be sure, the fact that the person who spoke with Officer Wallace identified himself by name is not sufficient authentication. However, in addition to identifying himself by name, the person called the Philadelphia Narcotics Unit and specifically asked to speak with Officer Kristopa in order to provide him information, and Kristopa told Wallace he had an informant by the name which the caller gave. Of course, there is the possibility, as there is in all telephone call authentication cases, that the caller was an imposter. In light of the particular circumstances of this case, however, the possibility is remote. Accordingly, we hold that the Government properly established the identity of the caller to be that of Officer Kristopa's informant.

Defendant's argument concerning a material misstatement of fact is based upon an alleged inconsistency in the informant's information. Apparently, the informant told Officer Wallace that he had observed defendant in the possession of, and selling, narcotics "over the weekend," between June 15, 1975, and June 18, 1975. It was established at the suppression hearing that June 15 fell on a Sunday and, obviously, that the other dates fell on Monday, Tuesday and Wednesday, respectively. Relying on *United States v. Thomas*, 489 F.2d 664 (5th Cir. 1973), *cert. denied*, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975), defendant contends that such a misstatement of fact requires the Court to invalidate the search warrant. The *Thomas* court held that a warrant based on an affidavit is invalid if the government agent either intentionally misrepresents a fact, whether or not material, or recklessly or negligently misrepresents a fact which is material to the establishment of probable cause. 489 F.2d at 669. *Accord, United States v. Park*, 531 F.2d 754, 758–759 (5th Cir. 1976).

Defendant's reliance on *Thomas* is misplaced. Parenthetically, we note that *Thomas* is only one of two lines of circuit court cases that have attempted to formulate standards to govern this misrepresentation issue. The other line was developed by the Seventh Circuit, *United States v. Carmichael*, 489 F.2d 983, 988–989 (7th Cir. 1973) (en banc), and adopted by the Eighth Circuit, *United States v. Marihart*, 492 F.2d 897, 900 (8th Cir.), *cert. denied*, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974), and by the Sixth Circuit, *United States v. Luna*, 525 F.2d 4, 8–9 (6th Cir. 1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976). The *Carmichael* court held, like the *Thomas* court, that a warrant based on an affidavit is invalid if the government agent intentionally misrepresents a fact, whether or not material. However, unlike the *Thomas* court, the *Carmichael* court held that a warrant is otherwise invalid only if the government agent recklessly misrepresents a material fact.[2] It is not necessary

2. The Third Circuit was recently faced with the issue of which of these two standards should be adopted, in *United States v. Vento*, 533 F.2d 838, 858–859 (3d Cir. 1976), and in *United States v. Armocida*, 515 F.2d 29, 41 (3d Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46

L.Ed.2d 84 (1975). However, the *Vento* and *Armocida* courts found it unnecessary to choose between the two standards since, in both cases, the Government, through its affiant, unintentionally misrepresented facts which

for this Court to decide which of the two standards should be adopted since neither one is an appropriate gauge by which to measure defendant's material misrepresentation contention.

 There is no question that "a facially sufficient affidavit, if it contains misrepresentations of fact, may lead to invalidating [a search warrant] based upon the affidavit." *United States v. Armocida,* 515 F.2d 29, 41 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). However, the *Carmichael* and *Thomas* standards were formulated to test the credibility of government agents, on whose affidavits magistrates must heavily rely. In this case, defendant is not challenging the credibility of Officer Wallace but, rather, the credibility of the informant. The defendant admitted as much when he stated that "the reliability of the informant is seriously brought into question by the material misstatement of fact that the informant made concerning the events he supposedly saw."[3] An attack on the credibility of a confidential informant may be successfully withstood by the Government if the two-pronged *Aguilar-Spinelli-Harris* test is met.

Since we have already found that the affidavit satisfies that test, it would appear that defendant is precluded from further challenging either the reliability of the informant or the truth of the information he gave to Officer Wallace. *See United States v. Carmichael, supra,* 489 F.2d at 989.[4]

 We need not finally decide this issue, however, since, even if such an attack may be made, this Court believes that the search warrant is valid. The informant's misstatement in the instant case is "of only peripheral relevancy to the showing of probable cause, and, not being within the personal knowledge of the affiant, did not go to the integrity of the affidavit." *Rugendorf v. United States,* 376 U.S. 528, 532, 84 S.Ct. 825, 828, 11 L.Ed.2d 887 (1964). The crucial information supplied by the informant was the fact that he had *recently* observed defendant at his residence in the possession of, and selling, narcotics. The fact that the informant may have been confused as to the exact dates on which he saw defendant engaged in drug-related activity is of little importance. Accordingly, the Court finds no impropriety in the search warrant.[5]

were not material to a showing of probable cause.

For an excellent discussion of the *Thomas* and *Carmichael* lines of cases and the attendant problems raised by this misrepresentation issue, *see United States v. Baynes,* 400 F.Supp. 285, 296–297 & n. 20 (E.D.Pa.).

3. *See* Memorandum of Law in Support of Defendant's Motion to Suppress Evidence and Statement ("Memorandum"), at 4.

4. The Supreme Court has not determined the extent to which a defendant may challenge the sufficiency of a warrant when the warrant is valid on its face and when the allegations of the affidavit establish probable cause. *Rugendorf v. United States,* 376 U.S. 528, 531–532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). However, as noted above, we believe that it would be inappropriate to test the credibility of informants further than has already been permitted by *Aguilar* and *Spinelli.* This conclusion is based upon the Supreme Court's latest pronouncements concerning the purpose of the exclusionary rule—the deterrence of police conduct that is violative of Fourth Amendment rights. *See Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Janis,* —— U.S. ——, 96 S.Ct. 3021, 49 L.Ed.2d 1046

(1976). Once it is determined that the government officer innocently and accurately relayed information which only the confidential informant knew to be false, then the fact that the officer was deceived by the informant would not be a sufficient reason to invalidate the search warrant. *United States v. Carmichael, supra,* 489 F.2d at 989 & n. 14. In such a case, to suppress evidence seized pursuant to the warrant would have little, if any, deterrent effect.

5. The Court notes that an argument could have been advanced that Officer Wallace made a misstatement of fact in the affidavit by omitting from it the informant's reference to "over the weekend." Even if we agreed with such a contention, it would not change our holding concerning the propriety of the search warrant for two reasons. First, as defendant concedes in his brief, there is "no evidence that [Officer Wallace] made such misrepresentation in the Warrant with any intent to deceive the issuing Magistrate. *See* Memorandum, at 5. Second, for the reasons stated above, the misstatement of fact is not material to a finding of probable cause. *See* note 2 *supra.* Under either the *Thomas* or *Carmichael* standards, unintentional and immaterial misstatements of fact by

## 2. Execution of search warrant.

 Defendant contends that the entry into the house was in violation of 18 U.S.C. § 3109 [6] because the officers did not wait until they were "refused admittance" before breaking open the front screen door.[7] Relying on *United States v. Augello,* 368 F.2d 692, 694 (3d Cir. 1966), *vacated on other grounds,* 390 U.S. 200, 88 S.Ct. 900, 19 L.Ed.2d 1036 (1968), which held that "refusal is present where it can reasonably be inferred from the actions or inaction of the occupants of the premises to be searched," the Government contends that the officers were refused admittance and, thus, complied with § 3109. Specifically, the Government points to the testimony of Lt. Wilson, wherein he stated that he opened the screen door only after he had knocked and announced his identity and purpose *and* after he saw a figure walking from the living room towards the dining room. If, in fact,

Lt. Wilson did observe a figure walking towards the dining room *after* he had announced his purpose and identity, then, in light of *Augello,* it could reasonably be inferred from the "figure's action" that the officers were refused admittance.[8] Accordingly, we must determine whether Lt. Wilson, in fact, did observe what he said he observed.

Lt. Wilson testified that he did not see Frederick Teti, Sr., until he entered the living room of the house. At that point, he observed Frederick Teti, Sr., to his immediate left, sitting in a chair. Thus, he could not have been the figure Lt. Wilson observed walking towards the dining room. Lt. Wilson further testified, as did Officer Wallace and Sgt. Pruitt, that, when he reached the dining room, defendant was seated in a chair speaking on the telephone. Michael Brady, a friend of defendant, testified that he was the person to whom de-

government officials afford no basis upon which to invalidate an otherwise proper search warrant.

**6.** 18 U.S.C. § 3109 provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The common law background to § 3109 is reviewed in *Miller v. United States,* 357 U.S. 301, 306–309, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Basically, § 3109 was designed to protect officers, as well as occupants, from physical harm, to protect an occupant's right of privacy in his home, and to protect against the needless destruction of private property. *See Miller v. United States, supra,* 357 U.S. at 313 & n. 12, 78 S.Ct. 1190; *United States v. Phillips,* 497 F.2d 1131, 1133 (9th Cir. 1974); *United States v. Bustamante-Gamez,* 488 F.2d 4, 9–10 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974).

**7.** There is no question that the opening of a closed but unlocked door is a "breaking" within the meaning of § 3109. *Sabbath v. United States,* 391 U.S. 585, 589–590, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). The Court believes that there is no difference, for § 3109 purposes, between the opening of a closed but unlocked door and a closed but unlocked screen door. *See id.* at 589 n. 5, 88 S.Ct. 1755.

The Court notes that defendant also contends that § 3109 was violated because the officers did not give notice of their authority and purpose. Since we have resolved the conflicting testimony on this particular point in the officers' favor (*see* Findings of Fact *supra*), we reject defendant's contention.

**8.** The Government also points to Lt. Wilson's testimony that he entered the house after he saw the figure move "because he was afraid the person was going to destroy evidence." Although it is not clear from the Government's briefs, we assume that by pointing to this testimony the Government is contending that it should be viewed as an exigent circumstance that excused compliance with the "refused admittance" requirement. While the Supreme Court has not yet decided whether exigent circumstances justify noncompliance with § 3109, *Sabbath v. United States, supra,* 391 U.S. at 591, 88 S.Ct. 1755, some circuit courts have answered the question in the affirmative. *See United States v. Agrusa,* 541 F.2d 690, 699 (8th Cir. 1976); *United States v. Smith,* 171 U.S. App.D.C. 342, 520 F.2d 74, 80–81 (1975); *United States v. Artieri,* 491 F.2d 440, 444 (2d Cir.), *cert. denied,* 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974); *United States v. Busta-mante-Gamez, supra,* 488 F.2d at 9–12. However, since we do not find Lt. Wilson's testimony concerning the moving figure to be credible (*see* discussion *infra*) there were no exigent circumstances that justified the officers' noncompliance with § 3109's "refusal of admittance" requirement.

fendant was speaking when the officers entered the house and that they had been on the phone approximately five to ten minutes prior to the officers' entry. Brady was able to specifically recall that particular phone conversation due to its rather abrupt ending. He stated that defendant said, "Michael, come over, three men just busted in my house." Thus, like Frederick Teti, Sr., defendant could not have been the moving figure, as he was already on the telephone when the officers arrived. The Government contends, however, that Lt. Wilson had a "reasonable subjective good faith belief" that someone was moving towards the dining room. We reject this contention. In light of the uncontroverted objective facts, we do not believe that Lt. Wilson's statement that he saw a figure move towards the dining room is credible.

■ Accordingly, the Court holds that the entry in this case was in violation of 18 U.S.C. § 3109. Since it is settled that evidence seized during a search in a dwelling entered in violation of § 3109 is inadmissible, *Miller v. United States,* 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *United States v. Bustamante-Gamez,* 488 F.2d 4, 7 n. 3 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974); *United States v. Pratter,* 465 F.2d 227, 230 (7th Cir. 1972), defendant's motion to suppress the physical evidence will be granted.

3. *Statement made to Treasury Agents.*

■ Defendant contends that the statement he made to Agents Minichino and Piccirilli, on September 5, 1975, should be suppressed for two different, yet overlapping, reasons. Defendant's first contention is that the agents failed to give adequate warnings, as required by *Miranda v. Arizo-*

na, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Relying on *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), defendant also contends that the statement must be suppressed as a fruit of the illegal entry. Since the facts do not support either of defendant's contentions, the Court will deny the motion to suppress the statement.[9]

■ With respect to the first issue, defendant relies on his testimony at the suppression hearing, which is contrary to the testimony given by the agents. Defendant quite rightly points out, however, that it is for the Court to decide questions of credibility and resolve conflicts in the testimony. Accordingly, the Court finds that the agents advised defendant of his rights at the inception of the interview, in accordance with *Miranda;* that the statement which defendant made after he received the *Miranda* warnings was voluntarily given (*see* 18 U.S.C. § 3501); and that the agents properly terminated the interview as soon as defendant indicated he did not wish to speak further unless his attorney was present.

■ The issue presented by defendant's second contention is whether the statement was obtained by exploitation of the illegal entry. Although we have already found, for Fifth Amendment purposes, that the statement was voluntarily given, it does not necessarily follow that defendant's Fourth Amendment rights were not violated. In other words, "the *Miranda* warnings, *alone* and *per se,* cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct.

9. Since we have held that the firearms may not be admitted in evidence against defendant, it is not necessary to decide whether defendant's statement was a fruit of the illegal entry. *See Wong Sun v. United States, supra,* 371 U.S. at 488, 83 S.Ct. 407. This conclusion stems from the fact that, besides defendant's statement, the Government is not prepared to offer any other evidence to establish defendant's guilt. Standing alone, such a statement could not support a conviction. "It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *Id.* at 488–489, 83 S.Ct. at 418 (footnote omitted). Nevertheless, we wish to express, at this time, our views concerning the issues raised by the motion to suppress the statement.

2254, 2261, 45 L.Ed.2d 416 (1975) (original emphasis). Rather, whether a confession is the product of a free will under *Wong Sun* must be determined on a case-by-case basis. *Id.* at 603, 95 S.Ct. 2254. Fortunately, the *Brown* court set forth four factors that are most helpful in making a determination of this kind. They are: (1) the voluntariness of the statement; (2) the temporal proximity of the illegal action and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Id.* at 603–604, 95 S.Ct. 2254.

 The first factor need not detain us as we have already found that the statement was given voluntarily. Concerning the second and third factors, the statement was separated from the illegal entry by more than two months and it was made in defendant's own home, a setting which could hardly be called coercive. Finally, the officers' misconduct does not appear to be purposeful in the sense that they illegally entered the house in the hope that incriminating evidence might be found. They had already obtained a warrant to search the premises. Rather, the illegal entry appears to have resulted from over-zealous police work. Accordingly, we hold that the connection between the illegal entry and the statement had "become so attenuated as to dissipate the taint." *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). *See Wong Sun, supra,* 371 U.S. at 491, 83 S.Ct. 407.

An appropriate Order will be entered.