**UNITED STATES of America**

v.

**Leroy MIAH.**

**Crim. No. 76–587.**

United States District Court,
E. D. Pennsylvania.

Dec. 19, 1977.

---

**35.** Ad.Rec., at 436.

**36.** Affidavit of George Paulini, ¶ 4.

**37.** *Id.*

David W. Marston, U. S. Atty. by Luther E. Weaver, III, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert F. Simone, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

CAHN, District Judge.

### INTRODUCTION

This is a motion to suppress physical evidence seized from defendant Leroy Miah's home on November 4, 1976, and to suppress a statement made to FBI agents subsequent to defendant's being informed of his *Miranda* rights. While I find that the government has committed several technical errors in its conduct of the investigation of the defendant, I conclude that these are insufficient to support defendant's position. Accordingly, the motions to suppress are denied.

### FINDINGS OF FACTS

On November 4, 1976, agents of the FBI obtained a warrant to search the home of defendant Miah for evidence of illegal gambling activities. The magistrate issued the warrant on the basis of the sworn affidavit of Special Agent Ernest Odom. Agent Odom in his affidavit relied upon information furnished by two confidential informants and upon corroborating FBI evidence.

The FBI executed the warrant in a timely fashion. At approximately 4:10 p. m., Special Agents Sherwood and Stokes, backed up by over a dozen other agents armed with guns and sledge hammers, approached the entrance of defendant's home. As Agent Stokes hit the transparent storm door once with his hand and yelled "FBI", the agents observed the defendant in the hallway. Agent Stokes called out the defendant's name and identified himself as "FBI". The defendant—perhaps frightened by the mob of armed agents outside the door—turned and fled. Without identifying themselves further, the agents entered the premises and pursued the defendant. In the process of doing so, the agents forcibly broke an inner door which someone had closed behind the defendant.

After entering, the agents searched the premises for gambling paraphernalia. In the process, they uncovered a pistol which is in part the subject of this motion to suppress. Although the defendant had been informed of his *Miranda* rights, including the right to remain silent, he responded to a question by Agent Stokes by stating that he was "keeping" the gun "for a friend". Defendant apparently seeks to suppress the statement as well as the search.

On December 14, 1976, defendant was indicted by a federal grand jury and charged with violating 18 U.S.C. § 922(h)(1), relating to unlawful receipt of a firearm. On October 3, 1977, I held a hearing on defendant's motion to suppress and entered an order permitting the government and the defendant to submit supplemental briefs on the issues raised during the hearing. Upon consideration of the evidence

introduced and the memoranda submitted to me, I now conclude that defendant's motion must be denied.

## ISSUES

Defendant's motion raises the following issues:

1. Was the search warrant issued without probable cause?
2. Was the manner of the FBI's entry into defendant's premises unlawful?
3. Was Agent Odom's failure to sign his affidavit a sufficient defect in the affidavit to nullify the warrant issued in reliance upon it?
4. Was the FBI authorized to execute the warrant, which was addressed to the "U.S. Marshal or his authorized agent"?
5. Was defendant's statement obtained in violation of *Miranda v. Arizona*?

## DISCUSSION

I. Probable Cause.

■ The fourth amendment prohibition against unreasonable searches and seizures does not preclude the issuance of warrants based on information provided by confidential informants. *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The sole requirement imposed by the prohibition is that an affidavit supporting such a warrant must disclose facts from which the magistrate can infer that the informant is reliable and that the information received from him in the particular case is credible. *Spinelli v. United States,* 393 U.S. 410, 415–7, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114–5, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Armocida,* 515 F.2d 29, 36 (3d Cir. 1969).

■ Agent Odom's affidavit in the instant case was based primarily on information supplied by two confidential informants, identified as CS # 1 and CS # 2. The affidavit set forth that both informants

were personally known to the FBI and had proven reliable on specific occasions in the past.[1] These assertions were sufficient to satisfy the requirement that the informant be "reliable". *See United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976); *United States v. Gimelstob,* 475 F.2d 157, 159 (3d Cir. 1963), *cert. denied* 414 U.S. 828, 94 S.Ct. 49, 38 L.Ed.2d 62 (1964); *United States v. Teti,* 422 F.Supp. 128, 132 (E.D.Pa.1976); *United States v. Fina,* 405 F.Supp. 267, 271 (E.D.Pa.1975).

■ The affidavit also provided facts from which the magistrate could infer credibility. The information provided by the informants was specific. CS # 1 informed the FBI that he personally knew the defendant, had been in his home, and had discussed a numbers scheme with the defendant there. In addition, CS # 1 disclosed details of defendant's gambling operation: for example, the number of the defendant's employees, his gross receipts and the existence of gambling records in his home. CS # 1's information was corroborated by the FBI agents. They confirmed unlisted telephone numbers allegedly used by CS # 1 in contacting the defendant to discuss gambling work and observed a "stream" of entrants—allegedly numbers writers working for Miah—entering defendant's home at the times predicted by CS # 1. CS # 1's information was further corroborated by the information of CS # 2, which included substantially identical details of defendant's gambling operations.

This information, including the declarations by the informants against their own self interest and corroborating evidence, was sufficient to establish probable cause. *See Harris v. United States,* 403 U.S. 573, 579–80, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). It is not incumbent upon investigating agents, prior to obtaining a search warrant, to corroborate every item disclosed by informants. They need obtain only sufficient information to show probable cause that the defendant has committed a crime and prob-

---

1. Hearsay concerning the reliability of an informant may support a finding of probable cause. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

able cause that evidence of the crime will be found at the location stated in the warrant. *See Spinelli v. United States, supra,* 393 U.S. at 419, 89 S.Ct. 584; *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Gimelstob, supra,* at 160. Under the circumstances of this case, where the FBI agents obtained and corroborated "reliable" informant information, they could not have been expected to do more.

II. Entry of the Agents.

█ Defendant contends that the failure of Agents Stokes and Sherwood to introduce themselves fully and wait for voluntary admission or a refusal to admit them to the premises violated 18 U.S.C. § 3109 and thus rendered the search invalid. I disagree.

The facts developed at the hearing disclose that the agents acted in a reasonable manner. They began to identify their purpose by knocking on the door and by introducing themselves. At that point they noticed the defendant inside the premises and saw him flee. While the defendant may have fled out of a justifiable fear of the armed men outside his door, it was equally justifiable for the agents to enter without further self-identification. *Ker v. California,* 374 U.S. 23, 39–41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962). The actions of the defendant were tantamount to a refusal of admission. *United States v. James,* 528 F.2d 999, 1017 (5th Cir. 1976), *cert. denied, Henry v. U. S.,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326, *rehearing denied, Austin v. United States,* 429 U.S. 959, 97 S.Ct. 383, 50 L.Ed.2d 326 (1977); *United States v. Woodring,* 444 F.2d 749, 750–751 (9th Cir. 1971); *United States v. Chambers,* 382 F.2d 910, 916 (3d Cir. 1966); *United States v.*

*West,* 328 F.2d 16, 18 (2d Cir. 1964). The agents had every reason to suspect the necessity of preventing Miah from fleeing to arm himself or destroy evidence located on the premises. *United States v. White,* 168 U.S.App.D.C. 309, 310–311, 514 F.2d 205, 206–7 (1975); *United States v. Singleton,* 439 F.2d 381, 385–6 (3d Cir. 1971). Their entry for the purpose of doing so was proper.

The two cases cited by the defendant do not mandate suppression. Defendant himself notes, at page 11 of his Memorandum, that *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), enunciated a reasonableness standard for forcible police entry. I have found that the agents acted reasonably under the circumstances of this case. *See Ker v. California, supra.* Furthermore, unlike the agents in *Miller,* Agents Stokes and Sherwood attempted to identify themselves and their purpose, but were interrupted from doing so by the exigent circumstances created by defendant's flight. Thus *Miller* is inapposite to the facts at issue here.

Nor does *United States v. Teti, supra,* support defendant's position. In *Teti,* Judge Bechtle specifically based his suppression ruling on the entry of FBI agents who did not wait for a response by the residents of the premises sufficient to support an inference that voluntary admission would be refused. However reasonable the flight of the defendant in this case may have been, it necessarily implied that admission was refused. Accordingly, the agents were entitled to enter in a prompt manner, both in order to secure their own safety and in order to assure that evidence of defendant's suspected crimes would not be destroyed.[2] *See United States v. Single-*

---

**2.** I do not hold that police may enter whenever they suspect that evidence may be destroyed, however unreasonable that suspicion may be. Nor do I reach the issue of whether "exigent circumstances" may justify a police entry in violation of 18 U.S.C. § 3109 absent a refusal of admission. *Sabbath v. United States,* 391 U.S. 585, 591, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). Finally, I do not sanction the type of mass gathering of armed agents at a suspect's door

which apparently occurred here. In this case, however, the agents were warned that defendant was armed and that he kept large and dangerous dogs on the premises. Under these circumstances, I find that the agents acted reasonably and that the defendant was not prejudiced in any way by the manner in which the search was conducted. *See United States v. Singleton, supra, Stamps v. United States,* 436 F.2d 1059 (9th Cir. 1971), and *McClure v. Unit-*

*ton, supra; Stamps v. United States,* 436 F.2d 1059 (9th Cir. 1971).

### III. Failure to Sign Affidavit.

 Agent Odom appeared before a U.S. Magistrate on November 4, 1976, in order to obtain a search warrant for defendant's home. He presented the magistrate with his affidavit, but failed to sign and date the document. However, the agent did execute a second "form" affidavit, entitled "Affidavit for Search Warrant" and signed the form in the presence of the magistrate. In the section of the form reserved for "facts tending to establish" probable cause, he entered "SEE ATTACHED AFFIDAVIT". Defendant contends that the failure to sign the attached pages was contrary to Fed.R. Cr.P. 41(c) and thus nullified the resulting warrant.

Had Agent Odom failed to sign and swear to the form affidavit, I might give serious consideration to defendant's contention. The facts presented here, however, disclose at best a technical violation of Rule 41(c) which does not support suppression.[3]

Defendant, without citing any authority, lengthily contends that the affiant's signature is critical to protect a criminal suspect from warrants issued upon false assertions of probable cause and to assure the accountability of persons making false assertions. Even if that contention is correct, however, in this case the defendant was adequately protected by Agent Odom's signature on the form affidavit. By that signature, Odom incorporated by reference the facts contained in the unsigned affidavit and swore to their truth. Since the unsigned affidavit was attached to the form affidavit, no mistake could be made as to its authenticity. The existence of the unsigned affidavit was equivalent to extra sheets which the agent might have attached when completing the "facts" section of the form affidavit because that section was too

small for all the requisite information. While it would have been better procedure for Agent Odom to sign the additional sheets, his failure to do so at best constituted a technical and ministerial violation of Fed.R.Cr.P. 41, and thus is insufficient to support suppression. *See United States v. Hall,* 505 F.2d 961, 963 (3d Cir. 1971) and cases cited therein; *United States v. Kennedy,* 457 F.2d 63, 67 (10th Cir.), *cert. denied* 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972); *United States v. Wilson,* 451 F.2d 209, 214 (5th Cir. 1971), *cert. denied,* 405 U.S. 1032, 92 S.Ct. 1298, 31 L.Ed.2d 490 (1972).

### IV. Execution of the Warrant.

 The magistrate's warrant was addressed to the "U.S. Marshal or his authorized agent". The warrant was executed by agents of the FBI who were not specifically authorized by the U.S. Marshal to carry out the warrant's commands. Defendant contends that this constituted an improper execution of the warrant and mandates suppression of evidence seized pursuant to it.

In response, the government contends first that by virtue of 18 U.S.C. § 3105 and 18 U.S.C. § 3107 FBI agents are empowered to execute any warrant relating to a violation of the laws of the United States, even where the warrant is not addressed to them. I find that this reading of the statutes is too broad. There may well be situations in which a magistrate specifically wishes to preclude the FBI from participating in a particular search. I have found no support for the proposition that Congress wished to eliminate that possibility by enacting 18 U.S.C. §§ 3105 and 3107.

Nor can I agree entirely with the government's second contention that the failure of the magistrate to specify the FBI in the warrant is by definition a "mere technical"

---

ed States, 332 F.2d 19 (9th Cir. 1968), *cert. denied,* 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1969).

**3.** As the government points out, the language of Fed.R.Cr.P. 41(c) contains no requirement

that the affiant sign this affidavit. Since I find the signature on the form affidavit to be sufficient under any interpretation of the rule, I do not reach the issue of whether such a requirement should be inferred.

violation of Fed.R.Cr.P. 41(c) and can never support suppression. As noted above, there may be important reasons for which the magistrate may wish to deny a specific law enforcement agency authority to execute a warrant. To hold that it is a mere technicality for the agency to override the magistrate's wish would effectively withdraw the magistrate's power and immunize the agency from all sanctions for disregarding his authority.

Despite these rulings, I nevertheless find that suppression is an inappropriate remedy in this case. Defendant was in no way prejudiced by the FBI's execution of the warrant. *See United States v. Burke,* 517 F.2d 377, 386 (2d Cir. 1975); *United States v. Hall, supra,* at 964. Furthermore, it seems clear that the magistrate's failure to specify the FBI in the warrant at issue here was a mere oversight. No evidence has been presented which suggests that the magistrate wished to prevent an FBI search. The warrant was given to FBI Agent Odom at his request. The terms of the warrant permitted the U.S. Marshal to designate the FBI as his agent for the purposes of executing the warrant. And the magistrate was presented no information even tending to show that the FBI was planning to act improperly. Under these circumstances, I find that the defect in the warrant was a ministerial error only.[4] *United States v. Dudek,* 530 F.2d 684, 688 (6th Cir. 1976) and cases cited therein; *United States v. Burke, supra,* at 384; *United States v. Harrington,* 504 F.2d 130, 134 (7th Cir. 1974); *United States v. Hall, supra.* Accordingly, defendant's motion to suppress on this ground must also be denied.

### V. Defendant's Statement.

■ Finally, defendant apparently claims that his fifth amendment rights were violated when Agent Odom, after informing defendant of his *Miranda* rights including the right to remain silent, asked him who was the owner of the pistol which was seized from defendant's house. I find from the totality of the circumstances that the statement defendant made in response was entirely voluntary and should not be suppressed. *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Schneckloth v. Bustamonte,* 412 U.S. 218, 227–30, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Agent Sherwood informed defendant of his right to remain silent early in the search. N.T. at 39. Agent Odom advised him of his full *Miranda* rights when Agent Odom arrived on the scene of the crime. N.T. at 79–80. I find that the defendant understood those rights. 18 U.S.C. § 3501(a). He is an intelligent man who spoke and understood English without difficulty during the suppression hearing before me. Furthermore, defendant testified that he was a law enforcement officer for five years and was himself charged with the responsibility of giving and explaining *Miranda* rights to criminal suspects. Absent any evidence of coercion or trickery, it is apparent that the defendant understood his rights and made his statement voluntarily. *United States v. Williams,* 526 F.2d 1000, 1002–3 (6th Cir. 1975); *Brown v. United States,* 356 F.2d 230, 232 (10th Cir. 1966); *United States v. Stegmaier,* 397 F.Supp. 611, 617–8 (E.D.Pa.1975), *aff'd* 538 F.2d 321 (3d Cir. 1976). The statement may thus be introduced at trial.

Defendant's motion to suppress will be denied in all respects.

---

4. There is little precedent dealing with the "address" aspect of Fed.R.Cr.P. 41(c). *United States v. Soriano,* 482 F.2d 469, 477–80 (5th Cir. 1973), though somewhat unclear, lends support to my holding in this case. In *Soriano,* the court examined the circumstances surrounding the execution of a warrant in which the "address" was left blank, and found that the defect under the facts at issue was "harmless". Similarly, in *United States v. Gannon,* 201 F.Supp. 68, 71–4 (D.Mass.1962), the court upheld a search pursuant to an overbroad warrant addressed to "any authorized person". *See also United States v. Sigal,* 341 F.2d 837 (3d Cir. 1965), *cert. denied,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1966); *United States v. Kennedy, supra,* at 67. I have found no cases in which suppression was granted on the grounds defendant presses here.