**UNITED STATES of America**

v.

**Edward R. BURKA.**

**Crim. A. No. 88–00228–01.**

United States District Court,
E.D. Pennsylvania.

Nov. 29, 1988.

Kristin R. Hayes, Asst. U.S. Atty., Philadelphia, Pa., for the Government.

Stephen V. Wehner, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

In this action, a federal grand jury indicted defendant Dr. Edward R. Burka for alleged violations of 21 U.S.C. § 841(a)(1) (unlawful possession of controlled substances with the intent to distribute and dispense) (7 counts); 21 U.S.C. § 843(a)(4)(A) (furnishing false information in a required record) (1 count); and 18 U.S.C. § 1505 (obstruction of an agency proceeding) (14 counts). A DEA agent obtained an administrative inspection warrant to search defendant's premises. When the agents began to suspect criminal activity, a criminal search warrant was obtained. Defendant now moves to suppress the evidence discovered in both the administrative and the criminal searches as well as any fruits of such evidence. For the reasons that follow, this Court denies defendant's motion.

■ 1. The Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* ("Act") authorizes the Drug Enforcement Administration ("DEA") to conduct administrative inspec-

tions of controlled premises pursuant to an inspection warrant. 21 U.S.C. § 880(a)-(b). To be valid, an administrative inspection warrant must be supported by an affidavit containing evidence sufficient to meet the statutory standard of probable cause. The "totality of the circumstances" set forth in the supporting affidavit must be considered in making a probable cause determination. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

■ 2. On May 5, 1987, Magistrate William Hall issued Administrative Inspection Warrant 87–692–M for the inspection of Dr. Burka's medical office. District court review of a magistrate's determination of probable cause is limited to the question of whether substantial evidence exists supporting the issuance of the warrant. *Illinois v. Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2333–32. I find that probable cause did exist to support Magistrate Hall's issuance of the Administrative Inspection Warrant.

3. Evidence of large purchases of controlled substances alone has been held to satisfy the probable cause standard for the issuance of an administrative inspection warrant. *United States v. Montrom,* 345 F.Supp. 1337, 1342 (E.D.Pa.1972), *aff'd without opinion,* 480 F.2d 918, 919 (3d Cir.1973) ("mammoth purchases" of a controlled substance "amply satisfied" probable cause standard); *United States v. Greenberg,* 334 F.Supp. 364, 367 (W.D.Pa. 1971) ("extraordinary purchases" of controlled substances satisfied probable cause standard); *United States v. Shiffman,* 572 F.2d 1137, 1140–41 (5th Cir.1978) (purchases of "large" quantities of drugs satisfied probable cause standard). In this case, DEA Investigator Sheller submitted an affidavit identifying defendant's large purchases of controlled substances during the preceding two years.

4. The Third Circuit also has held that the fact that a controlled premise had "never before been inspected to insure compliance with compulsory record keeping requirements is a circumstance that alone is sufficient to justify an administrative war-

rant in light of the deep public interest in enforcing compliance with record keeping requirements." *United States v. Prendergast*, 585 F.2d 69, 70 (3d Cir.1978). Several courts have held that the probable cause standard is met when a substantial period of time has passed since the previous inspection. *E.g., Greenberg*, 334 F.Supp. at 367; *United States v. Goldfine*, 538 F.2d 815, 818–19 (9th Cir.1976). Here, Investigator Sheller's affidavit recited the absence of any inspection of the defendant's premises in the preceding two years.

5. Several cases upholding probable cause determinations on the above-cited grounds involve drug purchases by pharmacies, which are "pervasively regulated" and thus have limited expectations of privacy. Defendant argues that the medical profession is not pervasively regulated and therefore a higher standard should apply in his case. At least three courts, however, have upheld administrative inspections of physicians' offices on grounds similar to those presented in this case. *See Matter of Burka*, 684 F.Supp. 1300 (E.D.Pa.1988) (court upheld probable cause determination on identical grounds in a related case);[1] *United States v. Montrom*, 345 F.Supp. 1337, 1342 (E.D.Pa.1972) ("mammoth purchases" of controlled substances "amply satisfied" probable cause standard); *United States v. Voorhies*, 663 F.2d 30, 33 (6th Cir.1981) (fact that registered physician's office had never before been inspected constituted a "valid public interest" justifying the issuance of an administrative inspection warrant). In addition, I find defendant's distinction between pharmacists and physicians to be immaterial. Whether or not the medical profession is a "pervasively regulated industry," physicians who dispense controlled substances must register with the Attorney General and are on notice that the DEA is authorized to conduct periodic inspections of premises where the records mandated by the Act are kept. 21 U.S.C. §§ 822–23, 827, 880(a) and (b). As a result, physicians dispensing controlled substances have the same reduced expectation of privacy for purposes of an administrative inspection as do pharmacists.

■ 6. Investigator Sheller's affidavit contained allegations that defendant Dr. Burka purchased excessive quantities of drugs. Defendant argues that these allegations are wholly unsubstantiated and thus are insufficient to support an administrative inspection warrant. I disagree. Applications for search warrants are to be interpreted in a common sense and realistic fashion. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed. 2d 684 (1965); *Matter of Burka*, 684 F.Supp. at 1304. Investigator Sheller's affidavit identifies the Automated Reports and Consolidated Order Systems ("AR-COS") Excessive Purchase Reports as the source of information indication that defendant Dr. Burka had purchased drugs in quantities greater than what is typical for registered physicians. These reports are compiled pursuant to federal regulations. *See* 21 C.F.R. §§ 1304.34–1304.38. A realistic reading of the application in question demonstrates that Investigator Sheller used the term "excessive purchases" to indicate a sufficient quantity of drugs to cause concern under the provisions of the Act. Magistrate Hall properly understood it as such. *See Matter of Burka*, 684 F.Supp. at 1304. When he issued the Administrative Inspection Warrant, Magistrate Hall did not simply ratify the bare conclusions set forth in the underlying affidavit, but properly and realistically considered the allegations it contained.

7. Investigator Sheller acted in good faith in applying for and obtaining the Administrative Inspection Warrant. Investigator Sheller drafted both the warrant and the supporting affidavit. The facts in his affidavit were correct.[2] The Administra-

---

1. This case is currently on appeal before the Third Circuit.

2. At the time Investigator Sheller signed the affidavit, he believed that all the facts it contained were correct. At the hearing on the Motion to Suppress, Investigator Sheller testified that although paragraph 22 of his affidavit stated that 57 individuals died of Dilaudid overdoses in 1985 in the Delaware Valley, in fact these overdoses occurred in Philadelphia.

tive Inspection Warrant was approved by a neutral and detached Magistrate.

8. Balancing defendant's privacy interests against the legitimate interests of the government in securing necessary information, I conclude that Investigator Sheller's affidavit provided a substantial basis for a finding of probable cause and that the administrative inspection was proper.[3]

■ 9. The Administrative Inspection Warrant is not a general warrant because it did not vest the Investigator Sheller with unbridled discretion to conduct an "exploratory rummaging" through defendant's papers in search of evidence. *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038–2039, 29 L.Ed.2d 564 (1971). "In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." *Andresen v. Maryland,* 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976).[4] Because the warrant provided sufficient standards by which the DEA Investigator reasonably could distinguish between those documents he could inspect and those he could not, the warrant was sufficiently particular. *Id.; United States v. Hayes,* 794 F.2d 1348, 1356 (9th Cir. 1986). The warrant limited the DEA Investigator to the search and seizure of records required to be kept under the provisions of the Act;[5] records and files appropriate for

verification of such records; documents concerning the dispensation, sale, administration, or distribution of controlled substances; and records that the Act requires registered physicians to keep. In addition, the scope of the search and seizure authorized by the Administrative Inspection Warrant lay within the ambit of probable cause established by the supporting affidavit. *Christine,* 687 F.2d at 753.

■ 10. The Act authorizes administrative inspections lasting longer than ten days upon a showing of need. 21 U.S.C. § 880(d)(3). Investigator Sheller's prior experience with administrative inspections of physicians' offices demonstrated that the volume and complexity of the records to be inspected necessitate an inspection period of more than ten days. The thirty day inspection period authorized by the Administrative Inspection Warrant was a reasonable one in light of the volume and complexity of defendant's records. Investigator Sheller actually was present in defendant's offices for only seven days.

11. After balancing the six factors enumerated by the Third Circuit in *In re Search Warrant (Sealed),* 810 F.2d 67 (3d Cir.1987), I find, as indeed the court found in that case, no indication on the record before me of harm to defendant's patients. Although the privacy interests of Dr. Burka's patients were invaded to some extent, the Government has a reasonable need to investigate the dispensation of controlled

---

3. When administrative inspections are conducted in response to individual events (such as defendant Dr. Burka's large purchases of controlled substances) rather than as a routine response to broad administrative guidelines, the issuing Magistrate must conduct a "more particularized inquiry" into the reasonableness of the proposed search. *Michigan v. Tyler,* 436 U.S. 499, 507–08, 98 S.Ct. 1942, 1948–49, 56 L.Ed.2d 486 (1978). I find that Inspector Sheller's affidavit provided substantial evidence that the public interest in enforcing the Act outweighed defendant's legitimate expectations of privacy and to justify issuance of the Administrative Inspection Warrant.

   In addition, I note that in a related civil action, Judge Broderick also found that substantial evidence existed to support the Magistrate's determination of probable cause with respect to this Administrative Inspection Warrant. *Matter of Burka,* 684 F.Supp. at 1304.

4. In *Andresen,* the Court upheld as sufficiently particular a search warrant that authorized the search of numerous specific documents "together with other fruits, instrumentalities and evidence of crime at this [time] unknown." 427 U.S. at 479–82, 96 S.Ct. at 2748. The Court held that the warrant did not authorize a search for evidence of *all* crimes, but only for evidence of the crime related to the probable cause determination. *Id.*

5. Dr. Burka informed Investigator Sheller that he had thrown away all relevant DEA order forms and corresponding vendor invoices despite the fact that the Act requires that such records be kept. These records contain information regarding the type and amount of medications received by a registrant.

substances and a statutory mandate exists allowing the Government to do so.

12. On the record before me, I cannot find that the administrative inspection was a subterfuge to obtain evidence for a criminal prosecution. No criminal activity was contemplated at the time of the administrative inspection. Investigator Sheller reviewed patient charts in an attempt to verify the information he discovered in Dr. Burka's computer records. Investigator Sheller believed, in good faith, that the Administrative Inspection Warrant authorized him to inspect any record that reflected defendant's dispensation of controlled substances. The patient charts which he inspected did contain such information. DEA Investigators typically inspect the "primary records" of registrants, whatever those primary records may be. In Investigator Sheller's view, defendant's patient charts constituted Dr. Burka' primary records. When the patient files failed to corroborate the computer records, Investigator Sheller suspected that defendant was engaging in criminal activity. This suspicion was bolstered by other information uncovered through the administrative inspection and through interviews of Dr. Burka's patients and staff conducted after the conclusion of the inspection. As a result, the matter was referred to the United States Attorney General's Office in June, 1987, almost a month after the administrative inspection. Investigator Sheller in no way communicated with any person in the United States Attorney's office during the course of the administrative inspection or at any time before July, 1987. Investigator Sheller served as the affiant for the Criminal Search Warrant simply because he had the greatest familiarity with the facts constituting probable cause in the case.

13. The Criminal Search Warrant was obtained and executed in accordance with Federal Rule of Criminal Procedure 41. The warrant was authorized by Assistant United States Attorney ("AUSA") Hayes and issued to the DEA Special Agents, who were under the supervision of the AUSA Hayes. Fed.R.Crim.P. 41(a) ("Rule 41") states that a search warrant may be issued "upon request of a federal law enforcement officer or an attorney for the government." AUSA Hayes drafted the search warrant, including Sheller's affidavit, after she thoroughly reviewed the facts with Investigator Sheller. The warrant and supporting affidavit were reviewed by AUSA Hayes' supervisor. AUSA Hayes presented the warrant to the Magistrate. Sheller was present to swear out his affidavit in accordance with standard practices of both the DEA and the United States Attorney's office. AUSA Hayes, working with Investigator Sheller, applied for the warrant. The warrant was executed by DEA Special Agents and the actual return of the warrant was made by Special Agent Frank Marrero. No diversion investigators participated in the search. Even if DEA Investigator Sheller, who applied for the Criminal Search Warrant, is not a "federal law enforcement officer" as defined in Rule 41, not every violation of the procedures prescribed in Rule 41 should result in the suppression of seized evidence. *United States v. Hall*, 505 F.2d 961 (3d Cir.1974); *United States v. Hooker*, 418 F.Supp. 476 (M.D.Pa.1976), *aff'd without opinion*, 547 F.2d 1165, *cert. den.* 430 U.S. 950, 97 S.Ct. 1591, 51 L.Ed.2d 799 (1977). A motion to suppress should be granted "only when the defendant demonstrates prejudice from the [Rule 41] violation.... The suppression remedy remains viable where a sufficient showing of prejudice is made, that is, prejudice in the sense that it offends concepts of fundamental fairness or due process." *Hall*, 505 F.2d at 964.[6] The only cases to decide the issue have denied motions to suppress where a search warrant was issued upon the re-

---

6. Using this test, the courts of this circuit have denied motions to suppress where an agent failed to include a piece of evidence in a receipt for property seized in violation of Rule 41(d), *Hooker*, 418 F.Supp. at 476; where an executing officer failed to either sign the return on a warrant or to return it before the issuing magis-

trate in violation of Rule 41(d); where a warrant was issued by a justice not authorized under Rule 41(a), *Duronio v. United States*, No. 80–526, slip op. (W.D.Pa. January 6, 1981); and where a warrant was executed by agents not authorized under Rule 41(c), *United States v. Miah*, 444 F.Supp. 996 (E.D. Pa.1977).

quest of a person not authorized under Rule 41(a). *United States v. Luk*, 859 F.2d 667 (9th Cir.1988) (no prejudice caused by fact that warrant was requested by Office of Export Enforcement agent); *United States v. Johnson*, 641 F.2d 652 (9th Cir. 1980) (no prejudice caused by fact that state agent applied for warrant).[7] I find that DEA Investigator Sheller's participation in the application for the Criminal Search Warrant in no way prejudiced defendant. In this case the warrant application contained the statement "[AUSA] Hayes authorizing." Although an AUSA does not have the power to transform an unauthorized agent into an authorized one, the courts have held that even minimal involvement by an AUSA is sufficient to prevent a finding of violation of Rule 41(a). *United States v. Schuster*, 777 F.2d 264 (5th Cir.1985), *vacated for death of defendant*, 778 F.2d 1132 (1985) (no violation of Rule 41 where warrant was requested by an unauthorized state officer but was prepared under the supervision of an AUSA); *United States v. Sangineto–Miranda*, 859 F.2d 1501 (6th Cir.1988) (no violation of Rule 41 where warrant was requested by an unauthorized state agent but an AUSA accompanied him to the magistrate); *United States v. Massey*, 687 F.2d 1348 (10th Cir.1982) (no violation of Rule 41 where warrant was issued to a state agent but was requested by telephone by an AUSA); *United States v. Carra*, 604 F.2d 1271 (10th Cir.1979) (no violation of Rule 41 where state officer requested warrant but did so under the supervision of a state officer). Here, the AUSA's involvement in authorizing the application for a warrant and supervising the investigation was substantial. There is no evidence of (a) an intentional or deliberate disregard of Rule 41(a); (b) prejudice in the sense that the search might not have occurred or might have been different if the Rule were more strictly followed; or (c) reckless disregard or conscious indifference to the Rule. On the contrary, the government's conduct was objectively reasonable and in good faith. Hence, assuming a violation *arguendo*, it was not a fundamental one or one of constitutional magnitude. *U.S. v. Martimez–Zayas*, 857 F.2d 122, 136 (3d Cir. 1988); *U.S. v. Luk*, 859 F.2d 667 (9th Cir. 1988).

14. Because the administrative inspection was valid, evidence derived from that inspection properly served to demonstrate probable cause for the Criminal Search Warrant.

■ 15. There was probable cause to support the issuance of the criminal search warrant under the totality of the circumstances. Defendant's purchases of Dilaudid were so large that in 1985 he ranked number one among all physicians in the nation, buying nearly three times the amount purchased by the second ranked physician. In 1985, defendant also was the largest purchaser of Tuinal, the third largest purchaser of morphine and the fourth largest purchaser of Percodan and Percocet in the nation. Defendant's computer records showed that certain of his patients were receiving extremely high dosages of controlled substances. Charts corresponding to the fifty-five patients who received the largest amount of such drugs did not match defendant's computer records. Defendant's records indicated that he was dispensing drugs on days when, by his own admission, he was out of the office. Thirty-one of defendant's patients denied receiving the controlled substances listed in defendant's computer records. Members of defendant's staff stated that defendant was altering patients' charts retroactively. Moreover, defendant contacted patients to instruct them as to what to tell DEA investigators who might contact them during the investigation.

16. The criminal warrant was obtained in good faith. The affidavit contained cor-

---

**7.** Defendant cites *United States v. Whiting*, 781 F.2d 692 (9th Cir.1986), for the proposition that evidence seized through the execution of a search warrant requested by an unauthorized person is subject to suppression unless an exception to the fourth amendment applies. In fact, however, the Ninth Circuit expressly stated that because neither party claimed on appeal that the search warrant was valid, the court restricted its analysis to questions pertaining to warrantless searches.

rect information and specifically identified the names of the 180 patients of Dr. Burka whose files were listed as subject to seizure in the criminal warrant.[8] The search warrant was authorized by the Assistant United States Attorney and approved by a neutral Magistrate.

17. The criminal search was authorized and supervised by an Assistant United States Attorney. Investigator Sheller was supervised during the criminal phase of the investigation by the DEA agents acting under the supervision of the Assistant United States Attorney.

18. The agents executing the Criminal Search Warrant seized only records and controlled substances authorized by the warrant. The DEA agents had a good faith belief that entire patient files were within the scope of the warrant, and in fact the warrant did authorize the search and seizure of patient file folders in their entirety. The controlled substances that were seized but not listed in the warrant will not be suppressed because these drugs were generic versions of those named in the warrant.[9]

**8.** Although the affidavit appears to list specifically only 108 patient names, this was merely a typographical error. The affidavit was hand-corrected to include a list of the entire 180 patient names.

**9.** Counsel for the Government and for the defendant so stipulated at the hearing on the Motion to Suppress.